IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 16-00516-SOM-01 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT JESSE |
| | ) | MINOAKA KANESHIRO'S SECOND |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| vs. | ) | |
| | ) | |
| JESSE MINOAKA KANESHIRO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JESSE MINOAKA KANESHIRO'S
SECOND MOTION FOR COMPASSIONATE RELEASE**

**I.        INTRODUCTION.**

Defendant Jesse Minoaka Kaneshiro entered a plea of guilty to two counts charging him with having possessed methamphetamine with intent to distribute.  In 2019, this court sentenced Kaneshiro to 268 months of imprisonment.  He has served approximately 65 months of that sentence and is currently incarcerated at Mendota FCI.  His anticipated release date is August 20, 2035.

Before this court is Kaneshiro's second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The primary bases for his motion are the COVID-19 pandemic, a claim that his sentence should be reduced because he should not have been found to have been a career criminal, and a claim that he needs to look after his minor children.

After considering Kaneshiro's medical conditions, the time remaining on his sentence, his history, and his children's circumstances, this court concludes that Kaneshiro has not demonstrated that extraordinary and compelling circumstances warrant a reduction of his sentence.

## II.    RELEVANT BACKGROUND.

### A.    Kaneshiro's Extensive Criminal History.

In 2019, Kaneshiro entered a guilty plea in this court to two drug charges.  Kaneshiro was sentenced to concurrent terms of 268 months of imprisonment on each count, concurrent terms of 5 years of supervised release with respect to each count, and $200 in special assessments.  *See* ECF Nos. 157, 159, 160.

Kaneshiro has an extensive criminal history. Kaneshiro's Presentence Investigation Report ("PSR"), which used the 2016 Guidelines Manual and which the court adopted without change, indicates that he had a Total Offense Level of 35 and 17 criminal history points, putting him in Criminal History Category VI.  *See* ECF No. 118, PageID # 611 (indicating use of the 2016 Guidelines Manual), # 612 (indicating a Total Offense Level of 35), # 620 (indicating 17 criminal history points, which placed him in Criminal History Category VI); ECF No. 161 ("The court adopts the presentence investigation report without change.").

The PSR detailed how Kaneshiro's 17 criminal history points were calculated.  Kaneshiro received 3 points for his

2

convictions in CR98-0735, which involved the unauthorized control of a propelled vehicle and driving without a license. He was originally sentenced to probation, but then resentenced on probation revocations, first to one year in prison, then to an additional five years of imprisonment. *See* ECF No. 118, PageID # 613. He also received 3 points for his convictions in CR01-0607, which again involved the unauthorized control of a propelled vehicle and a five-year prison sentence. *See id.*, PageID #s 615-16.

Kaneshiro received 3 points for his convictions in CR08-1-0002, involving convictions for kidnapping, terroristic threatening, and abuse of a family member. He was originally sentenced to 18 months in custody on the kidnapping conviction, with shorter prison terms on the other charges, but received a 10-year revocation prison term. *See id.*, PageID # 616. The factual circumstances underlying those convictions were particularly violent. According to Kaneshiro's PSR, on November 16, 2007, Kaneshiro's girlfriend asked a friend to drive her to meet Kaneshiro. On the way, they stopped. Kaneshiro pulled his car behind the friend's car, blocking the car from leaving. Kaneshiro then got out of the car, called his girlfriend a "fuckin' whore," and struck the girlfriend in the face three or four times with a closed fist. Kaneshiro left. However, when the friend drove to a shopping center, Kaneshiro pulled up next

to the car and ordered his girlfriend to get into his car. Kaneshiro then told his girlfriend that he would kill her if she left him, causing her to fear for her safety.  While the girlfriend was in his car, Kaneshiro punched the girlfriend with a closed fist all over her body.  When she tried to get out of the car, he grabbed her hair and pulled her back into the car. He then put his elbow against her neck, making it hard for her to breathe.  Later, when Kaneshiro was driving the two of them around, the girlfriend jumped out of the car while it was still moving and contacted the police.  Later, on November 28, 2007, Kaneshiro went to the hotel at which his girlfriend was staying. After the girlfriend allowed Kaneshiro into the room, the two argued and Kaneshiro again hit the girlfriend in the face.

Kaneshiro received 3 criminal history points for his convictions in CR08-1-0257, involving robbery, abuse of a family member, and violation of a restraining order, and received a sentence that tracked the sentence imposed in CR08-1-002.  In April 2008, the same girlfriend had a restraining order against Kaneshiro.  When she was at a market, Kaneshiro violated the restraining order.  He grabbed her from behind, causing her to fall to the ground.  He then grabbed and took a 14-carat gold chain she was wearing around her neck, causing her neck to become red.  *See* ECF No. 118, PageID # 618.

Kaneshiro received 3 criminal history points for an attempted methamphetamine trafficking conviction in CR10-1-0342 for which he was sentenced by a state court to a 10-year prison term. *See* ECF No. 118, PageID # 619. Because Kaneshiro committed the federal drug crimes in this case while he was on probation, 2 criminal points were added, giving him 17 criminal history points and a corresponding Criminal History Category of VI. *Id.*, PageID # 620.

Pursuant to USSG § 4B1.1, Kaneshiro was designated a career offender because he was at least 18 at the time of the felony drug offenses in this case and had at least two felony convictions involving crimes of violence or a controlled substance (Kidnapping in CR08-1-002; Robbery 2 in CR08-1-0257; and Attempted Methamphetamine Trafficking 2 in CR10-1-0342). *See* ECF No. 118, PageID # 620. Under USSG § 4B1.1(b), Kaneshiro's status as a career offender also placed him in Criminal History Category VI.

At Kaneshiro's sentencing, all parties agreed that Kaneshiro would have a Criminal History Category of VI whether he was deemed a career offender or not, simply because of his criminal history points. *See*, *e.g.*, ECF No. 166, PageID # 880 (Kaneshiro's attorney stating at his sentencing proceeding, "the career offender provision doesn't really make any difference in the guideline sentence").

5

With a Total Offense Level of 35 and a Criminal History Category of VI, Kaneshiro had a guideline range of 292 to 365 months of imprisonment.  *See* ECF No. 118, PageID # 628; Sentencing Table, United States Sentencing Commission Guidelines Manual (2016).  Kaneshiro was sentenced to a below-guideline term of imprisonment--268 months, in recognition of his sobriety and legitimate employment.  *See* ECF No. 166, PageID #s 894, 899; ECF No. 161, PageID #s 823-24.

**B.  Circumstances of Incarceration.**

Kaneshiro is 47 and incarcerated at Mendota FCI.  He has a scheduled release date of August 20, 2035, taking good-time credit into account.  https://www.bop.gov/inmateloc/ (input Register Number 09308-122) (last visited December 27, 2021).

Mendota FCI, a medium-security federal correctional institution located in Mendota, California, houses 1,237 inmates, with 1,144 at the FCI and 93 inmates in its adjacent camp.  *See* https://www.bop.gov/locations/institutions/men/ (last visited December 27, 2021).  As of the morning of December 27, 2021, Mendota FCI has no active inmate cases of COVID-19 and 1 active staff case of COVID-19, with 61 inmates and 46 staff members having recovered from COVID-19.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited December 27, 2021).

As of December 27, 2021, 1,060 inmates (approximately 85.7% of the inmates) and 240 staff at Mendota FCI were fully vaccinated against COVID-19.  *Id.*

### C.   Kaneshiro's Medical Conditions.

This court previously recognized that Kaneshiro is morbidly obese (BMI greated than 50) and has hypertension.  *See* ECF No. 206, PageID # 1434.

Kaneshiro is fully vaccinated against COVID-19.  *See* ECF No. 217, PageID # 1548; ECF No. 214, PageID #s 1488, 1510.

### D.   Kaneshiro's Children.

Kaneshiro has two minor children in his parents' care. *See* ECF No. 214, PageID # 1488.  Kaneshiro says his dad is "aging" and has glaucoma, diabetes, and kidney failure.  *See* ECF No. 207, PageID # 1444.  Kaneshiro says his mother also has medical issues, including diabetes Type 2, severe chronic kidney disease, hypertension, anemia, and hyperparathyroidism.  *See* ECF No. 207, PageID # 1446; ECF No. 214, PageID # 1507.  The PSR, prepared in mid-2017, indicated that Kaneshiro had had weekend visitation rights with his children.  Nothing in the record indicates whether Kaneshiro's other relatives are able to care for his children.

## II.   ANALYSIS.

Kaneshiro's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

7

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under
§ 3582(c)(1)(A), it must (1) find that the defendant exhausted
his administrative remedies or that 30 days have passed since he
filed an administrative compassionate relief request; (2) also
find, after considering the factors set forth in section 3553(a),
that extraordinary and compelling reasons warrant a sentence
reduction; and (3) find that such a reduction is consistent with
the Sentencing Commission's policy statements (assuming there are
any policy statements applicable to this motion). *See United
States v. Balgas*, 2021 WL 2582573, at *1 (D. Haw. June 23, 2021)
*United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10,
2020).

8

### A.   Kaneshiro Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

The Government concedes that Kaneshiro had satisfied the exhaustion requirement.  *See* ECF No. 218, PageID # 1558. Accordingly, this court finds that Kaneshiro has fulfilled the first requirement of § 3582(c)(1)(A).

### B.   This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this judge has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This judge has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, she is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v.*

*Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Balgas*, 2021 WL 2582573, at *2;; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

     The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion.  *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

C.  **Kaneshiro Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release, or That the Requested Reduction Would Be Consistent with Sentencing Commission Policy Statements.**

Kaneshiro contends that this court should exercise its discretion and find that extraordinary and compelling circumstances justify his early release.  This court is not persuaded.

1.  **On the Present Record, the Pandemic Does Not Justify Kaneshiro's Early Release.**

Kaneshiro seeks early release given the risks he faces if he contracts COVID-19.  The court acknowledges that Kaneshiro certainly has reason to be concerned, but concludes that Kaneshiro does not establish that the COVID-19 pandemic justifies early release at this time.

Kaneshiro faces some risks from COVID-19.  This court previously determined that Kaneshiro's morbid obesity (his BMI is just over 50) and his hypertension increase his risk of a severe illness if he contracts COVID-19.  *See* ECF No. 206, PageID # 1434.  That remains true under the CDC's current guidance.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 27, 2021).

However, Kaneshiro is 47 years old; his age does not place him in the highest risk category.  *Id.* ("Older adults are

11

more likely to get severely ill from COVID-19.  More than 81% of
COVID-19 deaths occur in people over age 65.  The number of
deaths among people over age 65 is 80 times higher than the
number of deaths among people aged 18-29.")  While this court
certainly agrees that Kaneshiro has legitimate concerns about
contracting COVID-19, his medical conditions, standing alone, are
not an exceptional and compelling reason that warrants a
reduction in sentence.

The court also notes that the likelihood of Kaneshiro
contracting a severe case of COVID-19 has been tempered by the
vaccinations he has received from the BOP.  Additionally, the
likelihood of Kaneshiro being exposed to COVID-19 at Mendota FCI
has been diminished given the vaccination rate and the lack of
any current active COVID-19 cases among its inmates.

> **2. Kaneshiro's Sentence is Not an Extraordinary
> and Compelling Circumstance Justifying His
> Early Release.**

Kaneshiro was sentenced in August 2019.  His *pro se*
motion argues that, under the First Step Act of December 21, 2018
(P.L. 115-391), his sentence would now be different because his
convictions did not involve crimes of violence.  *See* ECF No. 207,
PageID # 1439.  Kaneshiro ignores the fact that the First Step
Act was in effect when he was sentenced.

After Kaneshiro filed the present motion, this court
appointed counsel for him.  Kaneshiro's court-appointed attorney

argued in a supplemental memorandum and reply memorandum that, under *Borden v. United States*, 141 S. Ct. 1817 (2021), his convictions for kidnapping in CR08-1-0002 and robbery in CR08-1-0257 no longer qualify as crimes of violence and that he therefore should not have been deemed a career offender.  As noted earlier, pursuant to USSG § 4B1.1, Kaneshiro was designated a career offender and placed in Criminal History Category VI because he was at least 18 at the time of the felony drug offenses in this case, and he had at least two felony convictions involving crimes of violence or a controlled substance (Kidnapping in CR08-1-002; Robbery 2 in CR08-1-0257;[1] and Attempted Methamphetamine Trafficking 2 in CR10-1-0342).  *See* ECF No. 118, PageID # 620.  Kaneshiro's argument fails.

The issue of whether Kaneshiro's prior convictions involved crimes of violence is relevant only to his career offender status.  As Kaneshiro conceded at his sentencing hearing, even if he had not been designated a career offender under the advisory sentencing guidelines, his 17 criminal history points would still have put him into Criminal History Category VI, which also applies to career offenders.  Thus, his guideline range would not have changed whether or not Kaneshiro was a

---

[1] The state-court misdemeanor convictions for terroristic threatening, abuse of a family or household member, and violation of a protection order did not form the basis of Kaneshiro's career offender status.

career offender.  Kaneshiro's points were earned because his
state-court convictions involved felony convictions for which he
was sentenced to more than one year and one month of
imprisonment.  *See* PSR, ECF No. 118, PageID #s 613-20; USSG
§§ 4A1.1 ("Add 3 points for each prior sentence of imprisonment
exceeding one year and one month."), 4A1.2(e)(1) ("Any prior
sentence of imprisonment exceeding one year and one month that
was imposed within fifteen years of the defendant's commencement
of the instant offense is counted.  Also count any prior sentence
of imprisonment exceeding one year and one month, whenever
imposed, that resulted in the defendant being incarcerated during
any part of such fifteen-year period.").  Even if the state-court
felonies were not categorical matches to relevant generic federal
crimes, that would not affect Kaneshiro's criminal history
points.

Moreover, Kaneshiro fails to meet his burden of
demonstrating that his crimes were not crimes of violence.  This
court made the career offender determination based on the facts
stated in the PSR and arguments of counsel with respect to those
facts.  With respect to his kidnapping conviction in CR08-1-0002,
a Class A felony, Kaneshiro now argues that it did not involve a
crime of violence because his girlfriend willingly got into his
car and was able to leave through an unlocked door.  *See* ECF No.
214, PageID # 1495.  According to the PSR, even if his girlfriend

14

could be said to have willingly gotten into his car (ignoring
Kaneshiro's hitting of his girlfriend earlier in the day and
ordering her into his car), Kaneshiro subsequently forced her to
remain there.  Kaneshiro told his girlfriend that he would kill
her if she left him.  He also punched his girlfriend with a
closed fist all over her body.  When she tried to leave the
vehicle, he grabbed her hair and pulled her back into the car.
He then put his elbow against her neck, impeding her breathing.
Later, when Kaneshiro was driving the two of them around, the
girlfriend jumped out of the car while it was still moving to
escape.  Certainly, grabbing his girlfriend's hair to pull her
back into the car and her apparent need to jump out of a moving
vehicle indicate that Kaneshiro was violently and intentionally
or knowingly restraining his girlfriend.  *See* Haw. Rev. Stat.
§ 707-720(1)(d) and (e) ("A person commits the offense of
kidnapping if the person intentionally or knowingly restrains
another person with intent to . . . (d) Inflict bodily injury
upon that person . . . ; [or] (e) Terrorize that person . . .
.").

Nor does Kaneshiro meet his burden of establishing that
his robbery conviction in CR08-1-0257 was not a violent crime.
Kaneshiro was convicted of having violated Haw. Rev. Stat. § 708-
841(1).  Under section 708-841(1)(c), a person commits the crime
of robbery when the "person recklessly inflicts serious bodily

15

injury upon another" during the course of committing a theft. *See* ECF No. 214, PageID # 1498.  Subsection (c) is one of several ways a person can violate section 708-841(1).  It is unclear whether Kaneshiro is conceding that in pulling his girlfriend down from behind and yanking her gold chain, causing redness, he inflicted "serious bodily injury"[2] such that he violated section 708-841(1)(c).  In any event, the record does not include sufficient detail to show that Kaneshiro's state-court robbery conviction fell under section 708-841(1)(c), rather than, for example, section 708-841(1)(a), which requires the use of force with intent to overcome a person's physical resistance or physical power of resistance during a theft.  The court understands, of course, that the categorical approach requires the court to examine whether the state statute marries up with federal law or might have allowed a conviction under circumstances that would not have satisfied federal law.  But the burden on the present motion clearly lies with Kaneshiro, who does not meet his burden in that regard.

Third, Kaneshiro's reliance on *Borden* is unavailing.

---

[2] While "serious bodily injury" is not defined in chapter 708 of Hawaii Revised Statutes (involving offenses against property rights), chapter 707 of Hawaii Revised Statutes (involving offenses to the person) defines "serious bodily injury" as that "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Haw. Rev. Stat. § 707-700.

In *Borden*, 141 S. Ct. at 1822, 1825, the Supreme Court ruled that reckless conduct was insufficient to meet the definition of a "violent felony" for purposes of 18 U.S.C. § 924(e)(2)(B)(i), which defined "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another."  The Supreme Court reasoned that "'[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual.  Reckless conduct is not aimed in that prescribed manner."  *Id.* at 1825.

Kaneshiro's convictions for kidnapping in CR08-1-002 and robbery in CR08-1-0257 satisfy the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i), as they both have elements of intentional or knowing conduct involving force directed at another person.

Under section 707-720(1)(d) and (e), "[a] person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . (d) Inflict bodily injury upon that person . . . ; [or] (e) Terrorize that person . . . ."  Kaneshiro's kidnapping conviction appears to have been based on intentional or knowing conduct involving the use of force (restraining another person) directed at another person (with the intent to inflict bodily damage to or terrorize

17

another person).  Under section 708-841(1)(a), a person commits the offense of robbery in the second degree when the person "uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance" during the course of committing a theft.  Kaneshiro's conviction for Robbery 2 appears to have involved intentional conduct directed at another person (use of force to intentionally overcome another person's resistance).

Finally, Kaneshiro is unpersuasive in arguing that his prior drug conviction should not count towards his career offender designation.  *See* ECF No. 214, PageID # 1503.  In CR10-1-00342, Kaneshiro was sentenced to 10 years of incarceration for violating section 705-500 (Criminal Attempt) and section 712-1240.8 (Methamphetamine Trafficking in the Second Degree).  *See* http://jimspss1.courts.state.hi.us:8080/eCourt/ECC/CaseSearch.iface (input Case ID: PC101000342).  Section 712-1240.8(1) states that "[a] person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount."

Kaneshiro argues that, under *Descamps v. United States*, 570 U.S. 254, 260 (2013), this court must determine whether the state statute is a categorical match for a relevant federal crime before determining that it is a predicate conviction for purposes of a career offender designation.  Kaneshiro says that, under

18

federal law, a federal conviction for attempted possession of a controlled substance with intent to distribute requires the government to prove intent to engage in criminal conduct and an overt act constituting a substantial step towards the commission of the crime, both of which, Kaneshiro says, are missing from the substantive Robbery 2 crime prohibited by section 712-1240.8(1). *See* ECF No. 214, PageID #s 1502-03.

The problem with Kaneshiro's argument is that it overlooks the intersection of the two state statues cited in his conviction.  Section 712-1240.8(1) is the state statute governing the substantive crime of methamphetamine trafficking in the second degree.  Kaneshiro compares that state crime to the generic federal crime of an attempted controlled substance violation.  But the state crime of methamphetamine trafficking, which lacks the elements required for an attempted crime, must be read together with section 705-500 of Hawaii Revised Statutes, which governs criminal attempt.  Section 705-500 states, "(1) A person is guilty of an attempt to commit a crime if the person: (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime."  The combination of the

two Hawaii statutes governing attempted crimes and the substantive methamphetamine crime satisfies the elements of the generic federal crime of attempt to possess a controlled substance with intent to distribute.

### 3. Kaneshiro Does Not Meet His Burden of Showing That His Children's Situation is an Extraordinary and Compelling Circumstance Justifying His Early Release.

Kaneshiro's minor children are being raised by his elderly parents, who have serious medical issues.  However, given the lack of detail regarding his parents' situation, Kaneshiro fails to meet his burden of demonstrating an extraordinary and compelling circumstance justifying his early release.

Application Note 1(C) to U.S.S.G. § 1B1.13 discusses "Family Circumstances" amounting to "extraordinary and compelling reasons" to reduce a sentence.  These circumstances contemplate a defendant's need to take care of a family member, referring specifically to "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" and "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  Kaneshiro's children are being cared for by their grandparents, and he presents no details on how the circumstances of that care merit a sentence reduction at this point, only stating that his parents have medical conditions and that he would like "to eliminate a lot of the heavy work

around the house." ECF No. 207, PageID # 1444. Kaneshiro says, "Due to the serious health issues of his parents, if something happened to them while Mr. Kaneshiro was incarcerated[,] there would be no one that would be able to care for his minor children." ECF No. 214, PageID # 1507. Kaneshiro does not clearly indicate that his parents are currently unable to take care of the children or are otherwise incapacitated, only that he worries that no one would be able to care for his children if something happened to his parents.

This court also notes that, at the time the PSR was written, the children were living with their grand-aunt. It is not clear whether that person might be able to assist.

This court is unable to conclude from the present record that Kaneshiro's absence now amounts to an "extraordinary and compelling reason" to release him early. In so ruling, this court is by no means discounting the value to the children of having their father with them.

### 4. Section 3553(a) Factors.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a). Several of those factors weigh against a finding that extraordinary and compelling circumstances justify Kaneshiro's early release. Two considerations are particularly relevant. The first is the amount of time Kaneshiro has served. Kaneshiro

21

has been in custody since August 8, 2016, and his projected release date is August 20, 2035.  ECF No. 118, PageID # 605; ECF No. 198, PageID # 1328.  Even if credit for good behavior is taken into account, Kaneshiro has served only a small portion of his substantial sentence.

The court also considers Kaneshiro's extensive criminal history and his disciplinary record.  In addition to the violence and drug crimes described above, Kaneshiro's history includes four convictions for breaking into and/or stealing motor vehicles.  ECF No. 118, PageID # 613-622.  Moreover, while in prison, Kaneshiro was disciplined for being insolent to a staff member, although he lacks recent disciplinary issues.  ECF No. 198-2, PageID # 1342.  In sum, his record is not encouraging.

On the other hand, Kaneshiro has completed numerous educational and self-help courses while incarcerated.  *See* ECF No. 207-1, PageID # 1456-64.  The court commends this conduct and encourages Kaneshiro to continue to rehabilitate himself.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having considered the amount of time remaining on Kaneshiro's sentence, his history, the information in the record about his children's circumstances, and the totality of the medical information he has submitted, this court determines that the reasons raised by Kaneshiro do not rise to the level of being

extraordinary and compelling reasons warranting a reduction in his sentence.  This court reaches the same negative conclusion with respect to whether the requested reduction in sentence would be consistent with any applicable policy statement issued by the Sentencing Commission.

**III.    CONCLUSION.**

Kaneshiro's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.


It is so ordered.

DATED: Honolulu, Hawaii, December 28, 2021.




/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*United States v. Kaneshiro*, Cr. No. 16-00516-SOM-01; ORDER DENYING JESSE MINOAKA KANESHIRO'S SECOND MOTION FOR COMPASSIONATE RELEASE